UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-30081 |
| ) | |
| ROGER C. DYER, ) | |
| ) | |
| Defendant. ) | |

**GOVERNMENT'S PROFFER OF EVIDENCE
FOR PROBABLE CAUSE AND PROPOSED DETENTION PENDING TRIAL**

The United States of America, by its attorneys, Rodger A. Heaton, United States Attorney for the Central District of Illinois, and Assistant United States Attorney Patrick D. Hansen, proffers the following evidence, observations and arguments in support of its request that this Court order the defendant be detained pending trial.

**I.    STATEMENT OF GOVERNMENT'S EVIDENCE**

A. <u>Bomb Threat (Count 8)</u>: At approximately 12:46 a.m. on June 9, 2008, a caller telephoned the 9-1-1 operator in Montgomery County, and played a recorded, distorted voice stating that there was "31 pounds of Hercules TNT" with 20 toggle switches and a remote detonator ready to be set off at "Litchfield

1

Hospital," in Litchfield, Illinois.[1]  The caller stated that the explosives were said to be in the "most precious area of the hospital" and further stated that if authorities attempted to evacuate the hospital, the explosives would be detonated by a remote device.  The message further stated that the caller would re-contact the operator at 4:00 a.m. with a list of demands.  The caller made specific threats to detonate the explosives and "kill them all."

An investigation by the Litchfield P.D., Montgomery Sheriff's Department, Illinois State Police and Illinois Secretary of State's police bomb squad was launched.  After an extensive search (which caused disruption to the hospital), no explosives were found.

An investigation was also launched into the source of the call.  Based on technical evidence, it was determined that the call was made from a pre-paid cellular phone, also known as a "Trac Phone."  The phone call was tracked back to the vicinity of Palmer Trail Road and North 13th Avenue in Litchfield.  Further investigation indicated that a "Trac Phone" was purchased at the Wal-Mart store in Litchfield between 12:30 a.m. and 12:45 a.m.  Investigators concluded that this was the phone used to make the bomb threat, as the area from which the call originated is approximately 1/4 mile from the Wal-Mart store.  Investigators

---

[1] St. Francis Hospital is actually the only hospital facility in Litchfield.

secured photographs from a security tape from the Wal-Mart which showed a white male who purchased the Trac phone, and a small blue car used by the individual.

The next morning, Detective Mark Brazel of the Montgomery County Sheriff's Office reviewed a recording of the 9-1-1 call, and recognized at least one of the phrases used on the recording as similar to that used by Roger Dyer, a burglary suspect with whom Brazel had recent contact. Brazel reviewed the photos from the Wal-Mart security video, and identified the person depicted in the video as Roger Dyer. Surveillance cameras tracked the person leaving the parking lot in a small blue car, which was similar to one in which Brazel has seen Dyer, and heading in the direction of Palmer Trail Road and North 13th Avenue. Det. Robinson of the Litchfield Police Department then drove by Dyer's residence in Waggonner and viewed a blue Chevy Cavalier, which he identified as the same or similar to that on the Wal-Mart surveillance tape.

B. _Burglaries (Counts 2-7)_:   Understanding that Dyer was a suspect in prior pharmacy burglaries, Brazel then checked reports of burglaries from the surrounding areas for the early morning of June 9, and learned that Sullivan's Pharmacy in Raymond, Illinois was burglarized during that night.

Detectives interviewed individuals, including at least one believed to be

involved with Roger Dyer. They learned from these interviews, as well as from physical evidence, that Dyer and another person purchased diesel fuel the day following the burglary in Raymond and attempted to destroy physical evidence (empty pill bottles) from the burglary.

Based on this information, detectives sought and received a search warrant in Montgomery County for Dyer's house and surrounding property. The search was conducted on June 13, 2008. Numerous items were found inside the residence, including a large quantity and variety of pills, which appeared to be sorted and "bagged" for resale, as well as partially destroyed pill bottles. Both Roger Dyer and his wife were taken into custody for the possession of the controlled substances.

Roger Dyer was interviewed at the Montgomery County Sheriff's Office by Detectives Mark Brazel and Inspector Rick Furlong. The interview began at approximately 12:50 a.m. on June 14, and lasted approximately 2 hours. The entire session was video-taped with the consent of Dyer.

After much posturing by both the police and Dyer (mainly regarding the status of Angela Dyer), Dyer confessed to the bomb threat and burglaries. Dyer insisted he conducted all of the burglaries alone, and that neither his wife, nor anyone else knew anything about them. Regarding the bomb threat, Dyer

confessed that he went to the WalMart and purchased a "go" phone. He had previously recorded his voice through his computer, altered it, and loaded it on an I-Pod. He never activated the phone, just made the 911 call, and played the recording from the I-pod. After making the call, he threw the phone out of his car window. He also stated that he deleted the recording from his computer, using a program "beyond government standards."

According to Dyer, after phoning the threat, he went to a pharmacy in Raymond, Illinois (Sullivan Drug), cut the phone lines, cut the siren wiring (on the alarm), "center punched" the glass door and gained entry. There, he stole both money and drugs, concentrating on the controlled substances and pain killers. He stated that following the burglary, he burned all evidence, including the mask and shoes he wore during the burglary. This is consistent with the physical evidence found at the scene of the burglary. This is also consistent with the burglary tools found during the search of his residence.

Dyer also confessed to five additional burglaries, and provided details for each, including a prior burglary at Sullivan Drugs in Raymond (March 26. 2007), the Fritz Drug Store in Staunton (April 20 or 21, 2007), two burglaries at Metzger's Pharmacy in Assumption (September 16, 2007 and October 21, 2007) and the Pharmacy Plus in Carrollton (January 18, 2008). As with the confession to

the burglary at Sullivan Drugs, the physical evidence secured from the burglary scenes matched Dyer's statements.

Dyer was charged in Montgomery County with possession of controlled substances among other crimes. With the consent of his attorney, Dyer was interviewed again on August 4, 2008 by Special Agent Jeffrey Warren of the FBI and Investigator Scott Garriott of the DEA, along with Montgomery County Narcotics Detective Rick Furlong. Dyer again admitted to the burglaries, and added additional details, such as the use of a 30-channel "bearcat" scanner to see if police would respond to any alarms, his use of gloves, his destruction of his shoes and other physical evidence from the burglaries. He also confessed to making the bomb threat to divert Montgomery County and State law enforcement to that scene while he burglarized a pharmacy in Raymond.

C. <u>Possession of Controlled Substances with Intent to Distribute (Count 1)</u>: As noted, police recovered a large quantity of pills from Dyer's residence. These pills were separated into categories and put into plastic bags with the name of the pill written on the bags. Due to the quantity and the way they were stored, there is no doubt Dyer intended to sell the majority of these controlled substances.

**II.    STATUTORY FACTORS**

The government asks that the defendant be held without bond pending trial in this cause pursuant to the provisions of 18 U.S.C. § 3142(f)(1)(C) as there is no condition or combination of conditions that will reasonably assure the safety of the community if he is released. While the government is not prepared to present evidence based on a risk of flight, a presumption exists that no conditions "will reasonably assure the appearance of the person as required" under 18 U.S.C. §3142(e), as there is probable cause to believe that Dyer possessed with the intent to distribute substantial quantities of controlled substances.

    a.    <u>The nature and circumstances of the offenses</u>

The defendant engaged in a long string of burglaries to businesses which intentionally targeted small town pharmacies. The intent in each of these burglaries was to obtain controlled substances, both for personal use and for resale. In each instance he caused substantial property damage in addition to the controlled substance thefts. Each separate burglary resulted in the defendant being in possession of large amounts of controlled substances.

The defendants final burglary was capped off by the extreme act of phoning in a threat to set off a large explosive device in a hospital, with the threat to kill "every...soul" in the hospital. This act cause a significant disruption not only for law enforcement personnel, but also for the medical staff and patients of

St. Francis Hospital, as it forced the significant disruption of services until it could be finally determined that there was no bomb at the hospital.

    b.    <u>The weight of the evidence.</u>

As outlined above, the evidence against the defendant is overwhelming as to his commission of these crimes. The search of his residence uncovered both massive quantities of controlled substances bagged for resale, as well as physical evidence linking him to the burglaries of several pharmacies. Additionally, the Wal-Mart surveillance tapes captured Dyer purchasing the Trac phone, which was used to place the 9-1-1 bomb threat minutes later from a location down the road. The surveillance also captured him getting into his automobile, which is quite distinctive. Finally, the two statements made by Dyer, one of which was recorded on video, remove any doubt as to his guilt of the crimes charged.

    c.    <u>The history and characteristics of the defendant.</u>

The defendant has a prior conviction for burglary, although the conviction is over 10 years old. During the interview on August 4, 2008, Dyer suggested that he was addicted to pain killers.

    d.    <u>The nature and seriousness of the danger to the community.</u>

The pattern of criminal behavior, the involvement of the sale of controlled substances, and the disruptions caused by a threat to set off a bomb in a hospital

all creates a significant danger to the community.

Due to the seriousness of the crimes, the length of the criminal activity, and the pattern of criminality, the defendant has shown himself to be a serious danger to the community.

### III.  CONCLUSION

For all of the reasons outlined herein, the government asserts that no condition or combination of conditions which will assure the safety of the community from the defendant. It is therefore respectfully requested that he be held without bond pending trial.

        Respectfully Submitted,

        RODGER A. HEATON
        UNITED STATES ATTORNEY

By:   s/Patrick D. Hansen
      Patrick D. Hansen
      Assistant United States Attorney
      Illinois Bar No. 6187536
      318 South 6th Street
      Springfield, IL 62701
      Telephone: (217) 492-4450
      patrick.hansen@usdoj.gov